84 N.Y.2d 627 (1994)
644 N.E.2d 1331
620 N.Y.S.2d 775
The People of the State of New York, Appellant,
v.
Sidney Butler, Respondent.
Court of Appeals of the State of New York.
Argued October 18, 1994.
Decided December 13, 1994.
Jeanine Pirro, District Attorney of Westchester County, White Plains (Maryanne Luciano and Richard L. Hecht of counsel), for appellant.
Jacqueline F. Oliva, White Plains, Stephen J. Pittari and Robert W. Stieve for respondent.
Chief Judge KAYE and Judges SIMONS, SMITH and CIPARICK concur with Judge BELLACOSA; Judge LEVINE dissents and votes to affirm in a separate opinion in which Judge TITONE concurs.
*628 BELLACOSA, J.
The People appeal from an order of the Appellate Division that reversed, on the law, a judgment of Westchester County Court. Defendant was convicted after a jury trial of murder in *629 the second degree and criminal possession of a weapon in the third degree. The Appellate Division ordered a new trial because, in its view, the trial court committed reversible error by refusing defendant's request to instruct the jury on the lesser-included crime of manslaughter in the first degree. This holding was reasoned to be required because the trial court gave an instruction at defendant's request on the possible effect of intoxication on his culpable mental state. The dissenting Justice at the Appellate Division granted the People leave to appeal. The People urge that no instructional error as to manslaughter in the first or second degrees was committed. Defendant argues that he is entitled to affirmance either because the Appellate Division majority was correct or, in the alternative, because the trial court erred additionally in denying his request to instruct further down to manslaughter in the second degree. We reverse and remit for further proceedings at the Appellate Division.

I.
During the night of April 20, 1990, the homicide victim Anderson was socializing with some friends in her Yonkers apartment building. She decided to visit her cousin, a taxi dispatcher, at his company's office. She went there and, at approximately 2:00 A.M., she met her cousin and defendant Butler. The trio talked, drank beer, smoked marijuana, and inhaled cocaine for several hours. At approximately 4:45 A.M., the taxi dispatcher called an end to the "party" and offered defendant and decedent a taxi ride. The latter two were described as being engaged in friendly conversation during the taxi ride as they next proceeded to decedent's apartment at about 5:00 A.M. Decedent was last seen alive at 6:00 A.M. Neighbors discovered decedent lying semiconscious on the floor just outside her apartment, covered with blood, at approximately 7:00 A.M. She died in the hospital emergency room from three head contusions and 34 kitchen knife stab wounds, of which nine were fatal.
The police investigated, arrested and charged defendant in the killing. He was tried before a jury and requested jury instructions on intoxication and lesser-included homicide levels of manslaughter in the first degree and second degrees. The trial court gave the intoxication instruction, but refused the request with respect to the lesser-included offenses. The court reasoned that based on the brutality and ferocity of the *630 attack, no reasonable view of the evidence could support either lesser manslaughter count (CPL 300.50; see, Penal Law §§ 125.20, 125.15).
The jury's conviction was overturned by the Appellate Division, on the law (196 AD2d 659). It ordered a new trial solely for the reason that the trial court should have given only the lesser-included offense instruction for manslaughter in the first degree.

II.
At the outset, the correctness of the intoxication instruction is not before us. For purposes of the dispositive analysis of the instructional issue involving the lesser-included manslaughter offenses, the intoxication instruction, although based on a thin evidentiary predicate, is deemed warranted in this case (see, People v Perry, 61 N.Y.2d 849, 850, citing People v Orr, 43 AD2d 836, affd 35 N.Y.2d 829; People v Farnsworth, 65 N.Y.2d 734, 735; see also, People v Gaines, 83 N.Y.2d 925, 927; People v Rodriguez, 76 N.Y.2d 918, 920; Penal Law § 15.25). The intoxication instructional ruling sets the stage for the customary appellate review of the lesser-included instructional issues, as presented respectively by each side before us.
Contrary to defendant's assertions, the Appellate Division's rationale, and the discrete instructional trial court error propounded by Judge Levine, we conclude that a trial court's decision to give a defendant an intoxication instruction does not mechanically trigger a corresponding obligation for the trial court to give defendant complementary lesser-included offenses instructions within the homicide classification. The two species of instructions  Penal Law § 15.25 (intoxication) and CPL 300.50 (charging lesser-included offense)  may often be intertwined, but they are distinct and not inexorably and inextricably linked for trial instructional rubrics or for appellate review evaluation. Independent consideration of the complex variety of factual and evidentiary situations facing trial courts should control their rulings and our review. That has been the guiding lesson of our precedents in this area. In other words, the evidence of the particular case, not pure or abstract logic, governs.
Thus, the holding in this case realistically respects the view that in a great many cases in which an intoxication instruction may be warranted and is given, some corresponding lesser-included offense instruction might be necessitated. The *631 rulings, however, must be based on the appraisal of the particular evidence and the possibly reduced scale and difference of culpable mental states. This exceptional case does not fit that generality. Moreover, to create a logical imperative out of this case would clash with the individualized evidentiary assessment principles that are at the heart of this Court's lesser-included offense instructional development and jurisprudence.

III.
The textual guide on lesser-included offense instructions is found in CPL 300.50:
"1. In submitting a count of an indictment to the jury, the court in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. If there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense * * *
"2. If the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so."
Despite a defendant's request, a lesser-included offense cannot be submitted to the jury unless two requirements are met. The lesser and the greater offenses must be analyzed in such a manner that it would be impossible to commit the greater offense without, at the same time, committing the lesser offense. A reasonable view of the evidence must also support defendant's guilt on the lesser offense, but not on the greater offense (People v Cabassa, 79 N.Y.2d 722, 728, cert denied sub nom. Lind v New York, ___ US ___, 113 S Ct 633; People v Glover, 57 N.Y.2d 61, 63; People v Green, 56 N.Y.2d 427, 430; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 300.50, at 659). "If the record demonstrates * * * some * * * rational basis on which the jury might reasonably discredit the proof which would establish defendant's commission of the greater crime, yet accept that of guilt of the lesser, then the statute compels submission of the lesser offense if requested" (People v Scarborough, 49 N.Y.2d 364, 371). *632 On the other hand, when an instruction on a lesser-included offense would direct the jury "`to resort to sheer speculation,'" it should not be given (id., at 371, quoting People v Discala, 45 N.Y.2d 38, 43; see also, People v Aviles, 80 N.Y.2d 997, 997-998; see also, People v Green, supra, at 432-433).
The trial court, therefore, has the responsibility  usually in tandem but occasionally independent of its intoxication evidence and instruction assessment  to make a thorough and careful evidentiary assessment in the first instance to determine whether the evidence may reasonably support defendant's guilt on the lesser, but not the greater, offense (People v Cabassa, supra, at 728). Then-Judge Fuld cautioned in a seminal case that "a court should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict. Or, to express the matter in somewhat different terms, the jury's power to dispense mercy, by favoring the defendant despite the evidence, should not be allowed so to dominate the trial proceedings as to impede or interfere with the jury's primary fact-finding function" (People v Mussenden, 308 N.Y. 558, 563).
We are unpersuaded that, generally and especially not in this case, an arguable intoxication instruction inexorably binds the trial court to instruct automatically on lesser-included manslaughter offenses, irrespective of particularized evidentiary evaluation. Intent to kill and intent to injure seriously have been said to require the same cognitive abilities (see, Commentary to Criminal Jury Instructions, 1 CJI[NY] 9.45, at 516). Taking this view, an intoxication instruction on a second degree murder charge does not compel an instruction down to manslaughter in the first degree (see, Penal Law § 125.20). The Court unanimously coalesces on that aspect and concludes that the Appellate Division erred in ordering a new trial on that theory. Even were the intent element for intentional manslaughter  intent to seriously physically injure  viewed as one of the "`fine gradations along * * * [the] single spectrum of culpability'" (see, People v Green, 56 N.Y.2d 427, 432, supra), an instruction on intoxication should not dictate a per se lesser-included offense rule devoid of any evidentiary assessment.
Likewise, an intoxication instruction on murder second *633 degree should not compel a trial court to act, in essence and as it were, in a vacuum, and, irrespective of the evidentiary facts, thus allow the jury to decide that a defendant acted recklessly (see, Penal Law § 125.15; see also, People v Mussenden, 308 NY, at 563, supra). To propose, as the dissenting opinion does, that this jury  assuming it was ready to acquit defendant of intentional murder  could find this defendant guilty of reckless manslaughter in the second degree, but not be allowed ever to consider intentional manslaughter in the first degree would create its own anomaly. Simply put, an arguable intoxication instruction should not trigger an abstract and absolute command that defies or contradicts the rational and common sense view of the particular evidence as to either lesser manslaughter offense under the circumstances of this case, as further explained below.

IV.
Procedure, policy, practicalities and sound statutory interpretation and harmonization support reversal in favor of the People's appeal in this case. We recognize the procedural conundrum that the intoxication instruction may sometimes logically engender. It is not incumbent on this Court, however, in these circumstances, to join two distinct, though related, instructional species into an indissoluble union.
The court's thorough set of instructions to the jury included this unequivocal, easily understood choice:
"The question is one of degree and it is for you to decide whether the defendant was so intoxicated as to be unable to form the required intent. I will explain later the intent relative to each of the crimes charged.
"Remember, however, that since the People bear the burden of establishing that the defendant acted with the requisite intent you must find the defendant not guilty of a particular crime because of the evidence of intoxication [if] they were unable to prove that the defendant acted with the required intent".
Thus, if the intoxication feature  emphasizing the Penal Law dictate that intoxication is neither a defense nor affirmative defense  were believed and credited, the jury would have been obligated to acquit defendant on the only indictment count before it  murder in the second degree.
*634 As we learn from the development of the "any view of the evidence" rule in People v Mussenden (308 N.Y. 558, supra) into the CPL "reasonable view" modality, this area of the law is instinct with evidentiary particularity, not pure inflexible logic (cf., 5 Zett, New York Criminal Practice ¶ 32.3 [4], at 32-62 [stating that "`(i)t is the policy of the law to allow juries a latitude which is not hemmed in by absolute logic,'" quoting People v Clemente, 285 App Div 258, 264]). A per se lesser-included offense rule would (1) encourage compromise verdicts where the evidence does not warrant them; (2) counter the traditional, well-established jurisprudential rubrics rooted, statutorily and precedentially, in the reasonable view of the evidence governing a jury's consideration of potential lesser criminal culpability; and (3) alter, by constricting, the customary appellate review of instructional claims in this field of law.
The People in this case rely heavily on the nature and brutality of the slaying to support the argument that defendant's actions belie his having formed anything other than intent to kill, irrespective of the arguable intoxication palliative offered to the jury. Reciting the severity of the numerous wounds, nine of which were individually fatal, the People assert that defendant could have acted neither recklessly nor with intent merely to seriously injure (see, e.g., People v Tai, 39 N.Y.2d 894, 895; People v Asan, 22 N.Y.2d 526, 530-531; People v Sanducci, 195 N.Y. 361, 367-368; People v Totterman, 181 N.Y. 385, 388-389; People v Moore, 192 AD2d 560, 561, lv denied 81 N.Y.2d 1077; People v Ochoa, 142 AD2d 741, 741-742, lv denied 72 N.Y.2d 1048; People v Bell, 111 AD2d 926, 927; People v Weems, 105 AD2d 763). We agree that in a case such as this one, no lesser-included offense instruction on either serious injury manslaughter intent or reckless manslaughter was warranted or compelled. The crime was intentional murder in the second degree or nothing, under the law and under the explicit instructions that were given.
In the end, the burden remains always on the People to establish beyond a reasonable doubt that defendant, despite the possible effect of the arguable intoxication evidence, was capable of and did form the necessary intent to kill. The jury did so find. Had it acquitted defendant, under the precise and thorough and correct instructions given, it would be attributable to a failure of the People to satisfy their burden of proof on intentional murder, not that defendant in these circumstances was realistically guilty of some lesser degree of vicious *635 homicide. Applying policy considerations and an evidentiary-rooted appellate analysis, we conclude that the evidence in this case supports the trial court's ruling to reject the request for both manslaughter lesser-included offenses.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for further proceedings in accordance with CPL 470.25 (2) (d) and 470.40 (2) (b).
LEVINE, J. (dissenting).
I respectfully dissent. In my view, the trial court erred in refusing to submit to the jury the lesser included offense of manslaughter in the second degree (Penal Law § 125.15 [1] [reckless homicide]). Thus, I would affirm the order of reversal and remittal for a new trial, but on a ground different from that adopted by the Appellate Division.
As the majority notes, we must assume for purposes of this appeal that the proof of defendant's consumption of drugs and alcohol and their effect on him constituted "sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent [to cause the victim Anderson's death] on that basis" (People v Perry, 61 N.Y.2d 849, 850) and, therefore, the trial court was correct in giving an intoxication instruction. I also agree with the majority that a validly given intoxication charge does not automatically require the court to instruct the jury on every lesser included offense to the crime charged. The court must make the independent inquiry and determination required by CPL 300.50 (1) for submission of each lesser included offense of the pertinent count of the indictment, whether "there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" (id.; see also, People v Glover, 57 N.Y.2d 61, 63).
Applying the required CPL 300.50 (1) analysis here, I also agree with the majority that, on the undisputed facts of this case, notably the vicious infliction of 34 knife stab wounds to Anderson's body, nine of which were fatal, submission of the lesser included offense of manslaughter in the first degree under Penal Law § 125.20 (1) was not required, and that the Appellate Division erred in so holding. There simply was no evidentiary basis in the record for the jury to have found that defendant's intoxication created a reasonable doubt as to his intent to cause the victim's death (the culpability element of murder in the second degree) but not as to his intent to cause *636 the victim serious injury (the culpability element of manslaughter in the first degree under Penal Law § 125.20 [1]). A jury verdict of acquittal of murder in the second degree but guilty of manslaughter in the first degree would not be grounded upon any identifiable basis in the evidence, but on sheer speculation (see, People v Scarborough, 49 N.Y.2d 364, 369, 371; see also, People v Discala, 45 N.Y.2d 38, 43).
At first blush, the same reasoning would seem likewise to apply to the intentional murder lesser included offense of manslaughter, second degree, as "recklessly caus[ing] the death of [Anderson]" (Penal Law § 125.15 [1]); that is, that the jury had no basis upon which to conclude that defendant's intoxication negated his specific intent to kill but did not negate his awareness and conscious disregard of the substantial and unjustifiable risk that his conduct would cause Anderson's death (see, definition of "recklessly", Penal Law § 15.05 [3]). Indeed, it is this reasoning that forms the basis of the majority's conclusion that, in view of the ferocity of defendant's attack on Anderson, "[t]he crime was intentional murder * * * or nothing" (majority opn, at 634).
As both I and the majority have already accepted, however, in this case there was sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent to kill. What the majority fails to consider in their analysis is that the Legislature has imposed by statute a limitation on the use of evidence of intoxication to negate criminal culpability: evidence of intoxication cannot be used to negate recklessness (Penal Law § 15.05 [3]; People v Register, 60 N.Y.2d 270, 280; see also, Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 15.25, at 48 ["(v)oluntary intoxication may not negate a `reckless' culpable mental state"]). Thus the Penal Law definition of the reckless level of mental culpability states that "[a] person who creates such a risk [here, of causing death] but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto" (Penal Law § 15.05 [3]).
As we held in People v Register (60 N.Y.2d 270, supra), the purpose of the intoxication proviso in the definition of reckless culpability was to exclude from the fact finder's consideration of a defendant's guilt of a reckless crime the effect of intoxication to negate the perpetrator's awareness and conscious disregard of the substantial risk that his or her conduct would cause the prohibited result.

*637 "The rationale is readily apparent: the element of recklessness itself  defined as conscious disregard of a substantial risk  encompasses the risks created by defendant's conduct in getting drunk.
"Ultimately, the only intended purpose in permitting the jury to consider intoxication in a reckless crime is to negate defendant's awareness and disregard of the risk. It is precisely that point  the inconsistency of permitting reckless and otherwise aggravating conduct to negate an aspect of the offense  that persuades us that intoxication evidence should be excluded whenever recklessness is an element of the offense" (id., at 280).
It follows from the foregoing that, if in this case manslaughter, second degree (reckless homicide), had been submitted as a lesser included offense to intentional murder, the trial court would have appropriately instructed the jury not to consider the evidence of intoxication in determining defendant's awareness and conscious disregard that his conduct in inflicting 34 stab wounds (nine of which were fatal) upon the victim would create a substantial and unjustifiable risk of her death. Without consideration of the effect of intoxication on defendant's mental state, clearly the jury could have inferred defendant's "conscious disregard" from his acts alone.
It appears self-evident that, in performing the required analysis under CPL 300.50 (1) to determine whether manslaughter, second degree (reckless homicide), should have been submitted here as a lesser included offense to intentional murder, we must take into account that the jury would, thus, have been instructed to consider the effect of defendant's intoxication on his guilt of murder, but not on his guilt of manslaughter in the second degree. That being so, the conclusion appears inescapable that there would indeed have been a rational basis for the jury to have acquitted defendant of murder and yet convicted defendant of manslaughter, second degree (People v Scarborough, supra), and, therefore, the trial court committed reversible error in failing to submit that lesser offense to the jury. Accordingly, I vote to affirm the Appellate Division's order reversing and remitting for a new trial.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.